Next case is Figueroa-Matos v. Attorney General. Mr. Baxter. Good morning. Good morning, your honors. May it please the court, my name is Matthew Baxter. I'm counsel for the petitioner, Robert Figueroa. And this case reminds me so very much of my days in law school because I'm here to argue that the dissenting member of the board got the case exactly right. As well as the I.J. I'm sorry? As well as the I.J. Needless to say, your honors. Tell us why the review was wrong on the part of the board. I'm sorry, even with my digital hearing aids, I'm having trouble, your honor. Good. Tell us why the board improperly reviewed this case. What standard did they apply and did they apply the standard that they said they were applying? I think the devil's in the second question, your honor. The board obviously articulated the correct legal standard and purported to do what it was supposed to do, which is engage in de novo review only of the legal conclusion, which is to say the balancing of the equities and the exercise of discretion. And over that aspect of the case, of course, you have no jurisdiction. But I think what you need to do in this case is what other panels of this court have done in a number of non-president decisions, most of which are in my brief, one of which is in the 28J letter, which I submitted, I fear, rather late yesterday. But that case really articulates it well, the Maranescu case. And I think it articulates what the other panels of this court did in the other cases, which is to examine the mode of the board's analysis. Don't listen to what the board says it did. The mode of analysis, or is the heart of your argument here simply that the board engaged in improper fact finding? That's right, your honor. Isn't that the thrust of your position? That's right, your honor. And if that's the thrust of your position, what specific facts did the board find which were not facts found, though perhaps expressed in other language, by the IJ? Okay. The first and most obvious example here, your honor, is that the immigration judge found specifically that Robert was genuinely rehabilitated and that he was a person of good moral character. All right. What did the board allegedly find that was contrary to that? The board said that he has criminal tendencies and is likely to be a recidivist. Did the board use the word recidivist at any point in the text of its decision? No, it didn't, your honor. And that's exactly why I'm saying what you've got to do is look at what the board really did and not what it said. The Marinescu case is a perfect example of this, where the board substituted its own phraseology, but what it was really doing was completely changing the fact finding. Well, then explain to us how the board completely changed the fact finding, because I don't take you to be arguing that an appellate body cannot express, in somewhat different terms, the same factual findings that have been found by a first instance adjudicator. You're not suggesting that, are you? Of course not, your honor. I mean, this court would not be bound to frame factual findings in precisely the terms as a district court or a jury on special interrogatory. So as long as there is some kind of semantic or linguistic consistency between the terms used, the language used by the appellate body, and that used by the first instance adjudicator, in this case the IJ, that's a perfectly permissible means for that appellate body to go about expressing its adjudication, right? I wouldn't agree with your choice of words, semantic or linguistic. I think the issue is the substance. And on the substance... But the only way we can express substance is through semantics and linguistics. I agree, your honor, but we can also mislead using words and semantics. How did the BIA... And that's what I think it did here. I think if you read the BIA's decision, it is saying, without saying, so it's clearly insinuating a criminal disposition and a likelihood of recidivism. The board also said, quote, there is no indication, unquote, that there will be a diminution of the family's emotional support. Now... Well, even the concurring member of the board did not agree with that, right? Correct, correct. One member found that, and yet, for the board, as a matter of the decision, that eliminated an unusual or outstanding equity that was found by the immigration judge. Even though the regulation, the preamble to the regulation specifically says, indiscretionary decision-making, and when the board reviews what used to be called a mixed question of law and fact, it's found by the equities as found by the immigration judge. All the board can do is balance. And if, your honor, you are satisfied that the board rephrased it or really had the same substance in mind, then I lose. But I think if you examine each of the findings made by the immigration judge, for instance, the immigration judge talked about the unusual or outstanding equity of Robert's history of employment. And the board goes and makes up the fact that the gas station was being used solely as a front for dealing drugs when the immigration judge credited the testimony... It didn't say solely? It didn't say solely. And there again, we have semantics. It's absolutely ignoring... If you'll excuse me, it sounds like you're the one doing the creative fact-finding here. You're adding modifiers that were not in the BIA's opinion. I shouldn't be, and I apologize if I did. That's not the point. The point is there were facts that were found by the immigration judge, and the board goes back, made up that it was used for a front. It was used once by agreement with a third party to do a drug transaction. Counsel, the IJ herself stated that Mattos, quote, testified that he purchased the gas station for $25,000 with proceeds from his job as a drug courier. That's correct. It was purchased as a drug proceed. That's the IJ's statement. That's uncontested. The question is, was it then used as a front, or as he testified and she credited him, it employed four people and fixed cars and pumped gas and everybody was working on payroll? The board's picking and choosing. It doesn't get to do that. The immigration judge finds the facts. She finds the equities. She finds the outstanding and unusual equities. That's what the preamble says, and the same preamble acknowledges that the preamble itself has the force of law, just like the regulation has codified. All the board gets to do is take those facts and weigh them, and it didn't do that. It took those facts and changed them. Why did the board even go so far as to take note of Mr. Matos' favorable equities and characterize them as considerable, considerable but? Isn't that clearly a suggestion that what the board did was simply weigh the factors differently from how the IJ weighed them? If that were all the board did, Your Honor, that might be something that I would agree with. But the board did much more than that. It changed an excellent incarceration record that the immigration judge called both excellent and nearly impeccable and dumped it down to a well-behaved prisoner. Now, look at the Marinescu case, and it's the same sort of thing. Subtle shifts in emphasis, subtle shifts in phrasing, and what sounds like an unusual and outstanding equity. The man's been in prison for 20 years, and his supervisors write glowing statements about him, and it sounds like here's a guy that tows the line. He doesn't get in trouble. He sits by himself. These are very different equities, and when it comes to balancing them, even if one is considerable, it's going to take considerable equities. I mean, everybody knows this was a serious offense. But if you take what was a very considerable, unusual, outstanding equity and make it merely considerable by changing what the IJ said to what you want to hear, that's a different thing. The board never mentions rehabilitation, although it's bound to weigh each and every factor. It never mentions his good moral character, although it talks about his criminal disposition before arrest and so on. And your honors, I would be remiss if I didn't spend a moment talking to you about the elephant that's in the room. You can and should dispose of this case without dealing with the elephant because of the longstanding federal judicial policy of resolving cases without reaching constitutional issues. But if you resolve this case and aren't mindful of the elephant, it's going to be back here. If you remand this case to the board, I respectfully urge you to do something like what the Sixth Circuit did 15 years ago in INS versus Gonzales and say to the board, if on remand you again find that Mr. Figueroa does not merit an exercise of discretion, attach as an addendum to your decision a copy of every case where you've affirmed 212C for someone with a drug trafficking crime. And if your honors have green sentiments and philosophies, I assure you not too many trees will be killed in the making of that addendum. But isn't really, in one sense, the best you can hope for is that we find or we determine that the BIA misstated its standard and, in effect, engaged in the wrong standard. Therefore, that was a matter of law and, therefore, we have jurisdiction. And you would have to send it back for them to consider whether having corrected that error, that mischaracterization, as the dissent says, isn't that the best you can hope for? Because we really can't decide. If discretion is given to the IJ and the board, it's really not our discretion. It's theirs. It's absolutely correct, Your Honor. You cannot weigh the equities. You cannot reinstate the immigration judge's decision. That is clearly beyond this court's jurisdiction. All I'm suggesting is if we don't want to be back here in three years arguing a due process issue without a record that's sufficient to present that issue, I would urge you, if you do make that remand, to ask the board to show you the examples. The problem with what you ask is that each case stands on its own bottom in terms of their weighing of the equities for the purposes of exercising or not exercising their discretion. And you're, in effect, saying that somehow certain people get cut or break and others don't. Is that a thicket you really think appellate courts should get into? No, you can't, Your Honor. And if they do produce that kind of addendum, I'm not going to be here saying, compare this case with that case. You can't do that. But what I'm talking about here is everybody knows what no one will say. What matter of Burbano was issued specifically to disclaim because it's really true. The board has a de facto policy. It prejudges this case. If you've got a drug trafficking crime, you lose. It doesn't matter what the IJ says. It doesn't matter what the facts and the equities are. I see I'm out of time. I had intended to reserve two minutes, Your Honor. I had said that on the way in. Did we reserve the two? Great. That's perfect. Thank you. Good. Ms. Friedman. Good morning. Nancy Friedman for the Attorney General. Does the court have any questions for me? You don't really dispute jurisdiction here, do you? Hasn't the petitioner adequately set forth a legal question such that we can review the BIA's decision? Especially in light of Fadiga and Dominique. No, Your Honor. I have to kind of paraphrase something Hillel said. If this isn't the exercise of discretion and the weight of equities, what is? But that's not the point. Isn't what is being raised here a question of law? That is, that the BIA has engaged in improper fact-finding. Isn't that something over which we would have jurisdiction, a constitutional claim, or a question of law under 242A2D? I think that is the way the petitioner is labeling the question. I don't think that has any bearing on what this court is reviewing in this case. Well, the dissent by Cole certainly thought that there was mischaracterizing and erroneous fact-finding by the board. Well, listening earlier to the court's questions about what improper facts were found, I didn't hear an answer to that. What I heard was a disagreement as to how one would interpret those facts and weigh them as equities, which is exactly what the board did. Well, you could argue that if the IJ finds that, quote, someone has been genuinely rehabilitated, close quote, and the BIA finds that the person has displayed clear criminal tendencies, there's a pretty good argument that that's a different kind of fact that the BIA found than the one found by the IJ. Rehabilitation and criminal tendencies means that you don't have rehabilitation. So that would appear to be in conflict. Well, I don't think so at all, Your Honor. I think what the board was stating was the factual record of what this man had done in the past. It was a historical fact. Whether he was or was not rehabilitated itself is a judgment call that reasonable minds can disagree with. I may not be phrasing my question clearly, or I may even be misapprehending the statute and the regulation, but my initial point to you with respect to your challenge to jurisdiction went to the dictates of Section 1003, 1003.1, gosh, I hate these subsections. I understand what you're referring to. That the BIA is precluded from engaging, quote, in fact finding in the course of deciding appeals. What Mr. Matos contends is that the board engaged in fact finding. Yes. Would be improper, which would be contrary to the regulation. Correct. Is that not the raising of a question of law? That is, the fact that, if you will, the board engaged in improper fact finding. No. That's not a legal question. No. That's not a violation of a regulatory provision that would present a legal question. Well, I think it might be if there had been some improper fact finding. Well, but you have to get past the jurisdictional predicate first, do you not, before you can even begin to decide whether or not there's been improper fact finding. I understand your question, Judge. I'm trying to respond to it by likening it to the labeling of something as a constitutional violation or due process violation. I understand that, and creative counsel do that all the time with this statute and with this regulation. This court sees numerous times efforts to turn into a due process issue something that clearly is not. It's a way of obtaining jurisdiction. That's not what I think we have here, however. I'm speaking only for myself. And I agree. Okay, I don't. Well, yeah, I think it might make sense to focus. Let's assume we have jurisdiction. Tell us why the VA, all they did was re-weigh, and they didn't ignore some very important findings. You want me to tell you why, assuming you have jurisdiction, Your Honor? Why we should affirm. It should affirm because I cannot, under any circumstances, get my mind to come up with an explanation for what the Board did other than re-weighing the equities. It seems to me that the Board decision in this case illustrates, as well as anything could, that different people can look at the same set of circumstances and come to a different balancing of the equities. Well, let me give you one example. Your adversary, Mr. Baxter, suggests that the BIA completely discarded the rehabilitation finding made by the IJ and instead characterized it in such a way, and I don't mean to re-characterize his argument. I'm trying to state it as well as I can. But what the BIA did was make a conclusion so short of rehabilitation, characterize his prison record in a way that was almost damning by faint praise. That is one example of how he suggests that there was independent fact-finding here by the BIA, contrary to the law. Was it or was it not a re-characterization so profound as to constitute a separate finding of fact? Absolutely not, Your Honor, because what the Board did was look at the exact same facts that the immigration judge looked at. It didn't, for example, say, well, although the immigration judge found that he had letters and affidavits which attested to his good record and exemplary behavior or whatever the particular words were in prison, we find that, in fact, he had a number of reprimands or violations of good behavior in prison. It didn't do that. It looked at the exact same facts and came to a different conclusion, as did the Second Circuit in Noble v. Keisler, a very similar case. But here you've got a case where it's obviously, I mean, very close, because you've got the IJ having ruled in his favor, and you've got a three-way split among three panel members of the BIA. You've got one at one end of the spectrum who's saying, look, no matter what happens here, because it's a drug offense, ain't no way, I don't care what, I'm ever going to rule in his favor. And then you've got Philpoo saying, I don't even want to be part of that. I just, he's got some outstanding characteristics. I think I come down on the side that, okay, I'm going to deny. And then you've got Cole saying, wait a minute, there's improper fact-binding, and I would have granted, I would have affirmed the IJ. It's a very close case. And, in effect, what Judge Smith and I are asking you about, might, if this were to go back on remand, might this not be the tipping point for a decision that could go the other way? Absolutely it could go the other way. Absolutely. What else is the exercise of discretion other than saying this court composed of three members could each have different opinions looking at exactly the same facts, not refinding any facts whatsoever? That's what the Second Circuit addressed last year in Noble v. Keisler and said whether Noble merits 212C relief in the exercise of discretion. It was thus exercising its discretion by balancing the equities, including rehabilitation, which at least in this case we do not have the power to review. It was a similar argument, the board finding he had not been rehabilitated, IJ had gone the other way. Disagreement about whether you reach that judgment or you don't. That is the essence of the board's discretionary review, the regulation 1003.1D. It's clear in that, even if it wasn't when the board decided the case at issue, when it decided a few months later, a matter of ASB that I referred you to, it gives the example of something that went on in this case. A board may review de novo the question of whether a favorable exercise of discretion is warranted, citing the Noble v. Keisler case from the Second Circuit. If you take away the ability of the board to weigh and come out differently, even among the three panel members, then that's completely eliminating the board's discretionary review in 212C type cases. We don't want to eliminate their discretionary review. They have it, but they have to do it in a certain way. And as Cole points out in the dissent, because of, in effect, what I recall to be saying, in effect because of the prejudice against those who have committed drug crimes, we're going to, in effect, the person who wrote the first opinion is going to gerrymander certain facts. And no can do. I'm not sure I follow exactly what you're saying, Your Honor, about gerrymandering facts. Well, the point on rehabilitation, I mean, the opinion of the first member of the BIA, the one who wrote the three-page opinion, was that if the I.J. made a finding that this person had been genuinely rehabilitated, and that's in quotes, you can't, to say that the person displayed clear criminal tendencies, despite the fact that they've expressed remorse, that in effect says that there has not been rehabilitation. I might respectfully disagree, Your Honor. I think both things can exist and may well exist in this case. They're talking about criminal tendencies that he had previously. He may be, quote, genuinely rehabilitated, even assuming everyone agrees that's the case. The Board still has the discretion to deny the relief. And you may be right, but perhaps in this era, this month of do-overs, do we want a do-over here? But that's beyond the court's authority in this case. No, a do-over for the BIA to consider its discretion. Well, I'm... In light of the fact-finding that appears, at least in Cole's opinion, to have taken place. Well, I'm... Improper fact-finding. Right. I am still unclear on what those facts were that the Board found that the IJ didn't. And I also, in conclusion, want to say that I do not believe that the dissenting opinion would be written, again, as it was when this case was decided following a matter of ASB in May of 2008. And the similar opinion handed down the same day by the Board, matter of VK, in a similar vein. So with those thoughts... Just the fact that we are reviewing for abuse of discretion or reviewing a discretionary decision doesn't mean that there doesn't have to be some basis for that decision in the first place. Of course. And so it would appear that we can look at the factors that guided the discretionary decision. And if they are found wanting, then we can say that there was an abuse of discretion in these kinds of situations. Well, Your Honor, I would just conclude by referring to this Court's recent decision in the Cospito case and the unpublished GJIE decision that I referred to, and saying that this case similarly should result in the Court's lack of jurisdiction. Thank you very much. Thank you, Ms. Friedman. Mr. Baxter. Thank you, Your Honor. Very briefly, Your Honor. In response to Judge Ambrose's question about whether there wasn't a tension between a finding of genuine rehabilitation and findings about criminal tendencies, opposing counsel said that it was a matter of historical fact. That's exactly what rehabilitation is not about. Rehabilitation is about a change from the past and a new situation in the present. And that's what the statute and the case law about 212C is about. What is the issue now? What's the balance today? Well, but may the Board not, in the weighing process, consider both the criminal history for whatever it may import and either the fact of rehabilitation or how the Board itself weighs that rehabilitation against the rest of Mr. Matto's record?  Your Honor, I think it has to because one of the adverse factors is always going to be the offense that gave rise to the ground of removability. But you can't take a finding of genuine rehabilitation and then, in essence, find that the criminal tendency persists. And you can't do that when there's a finding of good moral character. People of good moral character either never had or no longer have their criminal tendencies. And similarly, counsel said, well, the Board looked at the same facts as the IJ and came to a different conclusion. They can't do that. On mixed questions of law and fact, on questions of equity, the preamble is clear. They're stuck with the facts and the equities as found by the immigration judge. They can weigh them. They can't change them. Thank you, Your Honor. Good. Thank you, Mr. Baxter. The case was well argued. We will take the matter under advisory.